Argued and submitted November 14, 1996, affirmed February 12, petition for review denied June 17, 1997 (325 Or 438)

## STATE OF OREGON,
*Respondent,*

*v.*

## LAURIE FRANCES WATKINS,
*Appellant.*

(951292CC1; CA A90682)

932 P2d 107

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant appeals her sentence for robbery in the first degree. She contends that the trial court erred in imposing a two-year durational departure sentence. We review to determine whether the court's findings of fact and reasons justifying the departure are supported by the evidence in the record and constitute substantial and compelling reasons to depart as a matter of law. ORS 138.222(3); *State v. Parsons,* 135 Or App 188, 190-91, 897 P2d 1197, *rev den* 322 Or 168 (1995). We affirm.

Two acquaintances of defendant, James Mriglot and Donald Pitchforth, asked defendant if she knew of anyone who had large amounts of drugs or property that could quickly be "turned into money." Defendant told them that Donald McMillen, who she said was a drug dealer, owned guns and stereo equipment and also had some property belonging to defendant and her boyfriend.

On March 22, 1995, defendant, Mriglot and Pitchforth went to McMillen's house. McMillen invited them to come in because he knew defendant. Pitchforth subsequently went into McMillen's bedroom and took McMillen's wallet and some antique coins. When McMillen discovered Pitchforth in the bedroom, Pitchforth shot and killed him.

Defendant was charged with conspiracy to commit robbery in the first degree, robbery in the first degree, theft in the third degree and felony murder. Defendant raised an affirmative defense to the charge of felony murder, as allowed by ORS 163.115(3).[1] The jury acquitted defendant on

---

[1] ORS 163.115(3) provides:

"It is an affirmative defense to a charge of violating subsection (1)(b) of this section that the defendant:

"(a) Was not the only participant in the underlying crime;

"(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof;

"(c) Was not armed with a dangerous or deadly weapon;

"(d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and

"(e) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death."

the felony murder charge but convicted her on the conspiracy, robbery and theft charges. The sentencing court imposed an upward durational departure sentence.[2] The court relied on OAR 253-08-002(1)(b)(J), which authorizes an upward departure if

> "[t]he degree of harm or loss attributed to the current crime of conviction was significantly greater than typical for such an offense."

In imposing the upward departure, the sentencing court reasoned that

> "without [defendant's] involvement * * * the victim in this case would now be alive. And yes, the jury found [defendant] not guilty of the murder aspect of this * * * but I still feel that this case has the death, has those circumstances that make this significantly different than the normal robbery case."

A sentencing court has discretion to impose a departure sentence whenever it finds substantial and compelling reasons to do so. *State v. Kennedy*, 113 Or App 134, 138, 831 P2d 712 (1992). OAR 253-08-002(1) provides a nonexclusive list of aggravating and mitigating factors to assist sentencing courts in determining whether such reasons exist. *State v. Wilson*, 111 Or App 147, 150, 826 P2d 1010 (1992). Those factors are designed to permit consideration of the circumstances of a particular crime that might be different from those envisioned by the legislature when it established the presumptive sentence for that crime. *Id.*

Defendant contends that, under the circumstances of this case, McMillen's death cannot sustain the durational departure sentence for two reasons:

> "First, as a matter of law, the guidelines do not authorize a departure based on an aspect of the crime not within the definition of the crime of conviction.[3]

---

[2] Defendant's convictions for conspiracy to commit robbery in the first degree and robbery in the first degree were merged for sentencing.

[3] For this proposition, defendant cites the following portion of the Oregon Criminal Justice Council's commentary to OAR 253-08-001:

"In the guidelines system, the seriousness of criminal conduct is determined by the crime of conviction. Consequently, a departure sentence is not appropriate for elements of alleged offender behavior not within the definition of the

"* * * * *

"Second, as a matter of fact, defendant was not in any way implicated in or responsible for the greater-than-typical harm and so cannot be punished for it."

The state responds that the sentencing court's reliance on OAR 253-08-002(1)(b)(J) was proper, because McMillen's death was a significantly greater harm than is typical for the crime of robbery.

■   We first consider defendant's legal argument. According to her, the upward departure in this case "captures an element" of the more serious crime of felony murder for which she was acquitted by the jury and, thus, in effect, punishes her for a greater crime than the crime for which she was convicted. Defendant contends that the jury "must have found" that she was not guilty of felony murder "because it found by a preponderance of the evidence all the elements of her affirmative defense."

We cannot know, of course, on what basis the jury acquitted defendant of felony murder. Even assuming that the jury based its not guilty verdict on the affirmative defense, that verdict does not aid defendant because it does not alter the fact that McMillen died during the robbery for which she was found guilty.[4] A greater-than-typical harm

---

offense of conviction. If the conviction is pursuant to a plea agreement as to the crime of conviction, a departure cannot be based on facts that would, if proven, establish a higher offense subclassification for the crime or result in a more serious crime of conviction.

"For example, if an offender is convicted of ORS 164.405 Robbery II, the sentence should not be aggravated beyond the upper limit of the presumptive sentence range because the offender was actually armed with a deadly weapon at the time of the robbery. This aspect of the crime was not captured in the crime of conviction since it is an element of ORS 164.415 Robbery I. Since this aspect of the crime was not captured in the conviction, it should not later be used to impose an aggravated sentence for the conviction of the lesser-included offense." *Oregon Sentencing Guidelines Implementation Manual* 125 (September 1989).

[4] Indeed, before the jury could rely on the affirmative defense to acquit defendant, it first had to find that she had participated in a felony in the course or furtherance of which another participant caused the death of a nonparticipant. ORS 163.115(1)(b). If the jury did not make that finding, it could not reach the affirmative defense. Thus, defendant's reliance on the affirmative defense for her acquittal of felony murder itself supports the trial court's determination that the robbery resulted in a harm greater than is typical of that offense.

occurred as a consequence of defendant's conspiracy to commit robbery and her participation in that robbery: The victim of the robbery died. Defendant's argument would require the sentencing court to ignore the fact of McMillen's death when sentencing her for robbery and conspiracy to commit robbery. The trial court did not err in considering the fact of McMillen's death in determining whether to impose an upward departure sentence for robbery.

■ Defendant's second argument is also misplaced. It is uncontested that McMillen's death resulted from the robbery and conspiracy to commit robbery for which defendant was convicted. McMillen's death was a harm that was significantly greater than the legislature had envisioned when it established the presumptive sentence for first-degree robbery. OAR 253-08-002(1)(b)(J) does not condition an upward departure on a finding that a defendant was implicated in or responsible for the greater-than-typical harm that occurred. Consequently, the fact that defendant was acquitted of felony murder is irrelevant to the sentencing court's determination that, because McMillen's death was greater than the typical harm for the offense of robbery, an upward departure was warranted.

The sentencing court did not abuse its discretion in imposing a two-year upward departure sentence for defendant's conviction of first-degree robbery.

Affirmed.